**\*E-FILED 8/3/05\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ERIC AUSTIN NIVA, | NO. 5:03-cv-0908 RS |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Eric Austin Niva ("Niva") seeks a new trial following the Court's entry of judgment in favor of defendant United States of America, through the Bureau of Land Management ("BLM"), on Niva's claim that it was responsible for the injuries he sustained in a motor vehicle accident on Clear Creek Road ("CCR"), located in the Clear Creek Management Area ("CCMA") of the Monterey National Forest. The motion for new trial was fully briefed and heard by the Court on July 27, 2005. Based on all papers filed to date, the oral argument of counsel, and the evidence and testimony previously received at trial, the motion for a new trial is denied, for the reasons set forth below.

Niva filed a claim against the BLM, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C.

§ 1346, arguing that it had failed to maintain CCR, thereby causing the vehicle he was driving on the evening of April 21, 2001 to hit a dangerously eroded area and roll down the adjacent hillside. The BLM responded that it was under no obligation to maintain CCR and that, even assuming it had been charged with that responsibility, the discretionary function exception set forth in the FTCA exempted it from liability. In addition, the BLM averred that it was insulated from liability under the state of California's recreational use immunity statute, Cal. Civ. Code § 846.[1] The case was tried to the Court sitting without a jury. Based on all testimony and evidence submitted, pursuant to Fed. R. Civ. Pro. 52, the Court entered findings of fact and conclusions of law which, in sum, found that the BLM was entitled to immunity under Section 846 and, accordingly, entered judgment against Niva.

Niva identifies numerous errors that he contends warrant either a new trial or the amendment of the Court's findings and conclusions. First, that the Court erroneously applied Section 846 which provides for immunity from suit in certain circumstances. Second, that even if applicable, such immunity does not come into play because Niva demonstrated that the BLM knew injury was "probable" as a result of the eroded area on CCR. Third, that the Court's findings and conclusions improperly require before a determination of "probable injury:" (a) the existence of a hidden peril; (b) the BLM's knowledge of prior accidents at the site; and, (c) the intentional disregard of BLM regulations regarding the maintenance of CCR. Fourth, that the Court must enter a finding as to the speed of Niva's vehicle at the time of the accident for purposes of showing a hidden peril. Fifth, that the Court erred by admitting and relying upon the trajectory analysis offered by BLM's expert, and by excluding a California Highway Patrol ("CHP") General Order, No. 100.46, relative to reporting dangerous conditions.

The BLM responds that the Court properly applied Section 846, and then correctly concluded that the evidence did not support a finding of knowledge of "probable injury" on the part of the BLM. Contrary to Niva's reading of the Court's findings, the BLM argues that the order does not require as a prerequisite to a finding of knowledge of probable injury the existence of the specific factors listed above. Further, the

---

[1] The government also argued that the accident and resulting injuries were caused solely by the negligent conduct of Niva, but the Court did not reach that issue based on its conclusion that the government was immune from liability under Section 846.

2

BLM insists that the Court need not determine the speed at which Niva's vehicle was traveling at the time of the accident because that determination is not material to any finding or conclusion in the case. Finally, it contends that no error was committed when the Court relied upon the trajectory analysis of BLM's expert or when it excluded CHP General Order No. 100.46.

## II. LEGAL STANDARDS

Fed. R. Civ. Pro. 59(a) provides in relevant part that a new trial may be granted "for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." When a case is tried to the court without a jury, the court may "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Id. A motion for a new trial is directed to the sound discretion of the trial judge and is usually ordered when the trial judge deems that it is in the interests of justice to do so. See, Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir. 1990).

## III. DISCUSSION

A.  Applicability of California Civil Code § 846

Niva contends that Cal. Civ. Code § 846 is inapplicable because CCR is not owned by the federal government but is, rather, owned by the County of San Benito ("County"). See Toomey v. United States, 714 F.Supp. 426, 428 (E.D. Cal. 1989) (noting that § 846 does not apply to property owned by California public entities). This new argument, however, directly contradicts Niva's longstanding position during and after trial, that CCR is owned by the BLM from which the County obtained a right-of-way easement. First, in the Joint Pretrial Statement, Niva agreed, "With the exception of certain tracts of land none of which has any relevance to this case, CCMA is owned by the United States and administered by the BLM" and that "the accident occurred while Niva was driving along CCR within CCMA." See Joint Pretrial Statement at p. 2, Undisputed Facts (c) and (d). Second, during trial Niva attempted to offer evidence that the BLM had obtained title to CCR in 1968. See Trial Transcript at pp. 189-197. Third, following the trial, Niva submitted his proposed findings of fact and conclusions of law in which he requested that the Court find that the County maintained its *easement* rights in CCR. See Niva's Proposed Findings at pp. 2-3.

Moreover, none of the witnesses presented by Niva at trial, including Max Bridges, Dave

3

Slibsager, and Robert Beehler, testified that CCR is owned by the County. In fact, contrary to his present contention, the witnesses testified regarding their understanding that the County had historically maintained the roadway, that it had obtained an easement from the BLM, and that it had ceased further maintenance responsibilities on CCR. See generally, RT 58-96, 185-217, 428-456, 499-517. Prior to the entry of judgment in this case, Niva made no request, (and cited no evidence in support), that the Court enter a finding that CCR is owned by the County. Although he notes in passing in his proposed findings that § 846 does not apply "because the County maintained title to the road and it was open to the public all year," Niva submitted no evidence to support that assertion. See Niva's Proposed Findings of Fact and Conclusions of Law at p. 31, lines 25-26. Accordingly, because there is no evidence that the County owns CCR, and because Cal. Civ. Code § 846 applies to the United States where, as here, it is sued as a landowner, Mattice v. United States, 969 F.2d 818 (9th Cir. 1992), Niva's request for a new trial on the claim that § 846 does not apply is denied.[2]

B.   Recreational Use Immunity Pursuant to California Civil Code § 846

As noted above, the BLM argued at trial that it is entitled to immunity from Niva's claim for damages pursuant to § 846. That statute provides that a landowner owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose, unless the landowner: (1) willfully or maliciously fails to guard against or to warn of a dangerous condition; (2) conditions entry on the receipt of consideration; or, (3) expressly invites the guest to use the premises. Cal. Civ. Code § 846. As set forth in this Court's Findings of Fact and Conclusions of Law, only the first exception, willful or malicious failure to warn of a danger, potentially applies to Niva.

In order to establish willful misconduct under California law, it was Niva's burden to show that the BLM: (1) had actual or constructive knowledge of the peril; (2) had actual or constructive knowledge that

---

[2] Niva's reliance on Delta Farms Recreational District v. Superior Court, 33 Cal.3d 699 (1983) is misplaced for this same reason: there is no evidence that CCR is owned by the County of San Benito. Moreover, Delta Farms holds only that Section 846 does not apply to California public entities. That case does not discuss the application of the statute to the United States. As stated in the Court's Findings of Fact and Conclusions of Law, however, the Ninth Circuit has determined that this statutory immunity applies to the United States and, accordingly, the BLM is entitled to rely on the statute as a defense to a suit brought under the FTCA to the same extent as would a private individual. Simpson v. United States, 652 F.2d 831, 833 (9th Cir. 1981) (Section 846 immunity applies to United States).

4

injury was probable, as opposed to possible; and, (3) consciously failed to act to avoid the danger. Mattice v. United States, 969 F.2d at 822.  With respect to the first requirement, this Court found that the evidence established the BLM had actual or constructive knowledge of the peril.  Of course, Niva does not quarrel with that finding.

With respect to the second prong of the "willful and malicious" exception to the statute, however, this Court concluded that Niva failed to establish that the BLM had actual or constructive knowledge that injury was probable, as opposed to just possible, due to the existence of a washout on CCR.  It is insufficient simply to establish that government employees knew potentially dangerous conditions occasionally existed on the roadways.  See e.g., Spires v. United States, 805 F.2d 832 (9th Cir. 1986) (plaintiff failed to establish that government had knowledge of probable injury based on employees' knowledge that ditches caused by flow from storm sewer sometimes occurred on roadway).  Rather, a plaintiff seeking to recover damages must establish application of the "willful and malicious exception" to the immunity statute by showing "any intentional act of an unreasonable character undertaken in disregard of a known risk or a risk so obvious that the actor must be taken to have been aware of it, and so great as to make resulting harm highly probable." Id. at 834.  As this Court previously noted, no prior accidents had occurred at the site of the Niva accident.  Moreover, even if prior accidents had occurred at the Niva site, the Ninth Circuit has found knowledge of prior accidents to be insufficient to place the government on notice that serious injury is probable where the subsequent accident did not occur in the same manner as did the previous occurrences.  Mattice v. U.S., 969 F.2d at 823.

Niva disregards the Mattice decision and instead relies on Termini v. United States, 963 F.2d 1264 (9th Cir. 1992) and other cases[3], to support his argument that recreational use immunity is unavailable to the BLM because it engaged in willful and malicious behavior by failing to repair the washout on CCR.  As discussed in this Court's previous order, however, Termini explained that constructive knowledge under California law is measured by an objective standard, namely, "whether a reasonable man under the same or

---

[3] See also Rost v. United States, 803 F.2d 448, 451 (9th Cir. 1986)(gate post that impaled vehicle passenger was camouflaged and, therefore, could not be seen by the driver); Simpson v. United States, 652 F.2d 831, 833 (9th Cir. 1981) (plaintiff not warned that bank could collapse and plunge visitor into scalding water).

5

similar circumstances as those faced by the actor would be aware of the dangerous character of his conduct." Id. at 1268. The Termini court also concluded that, in maintaining the spur leading to a cliff which caused the accident in that case, the government had failed to observe its own safety standards, thereby supporting the conclusion that it possessed constructive knowledge that injury would likely result from its actions. Id.

In its prior findings, this Court concluded that Niva's reliance on the Termini, Rost, and Simpson decisions was unavailing since those cases involved a hidden peril which had caused an accident and resulted in injury. In contrast, this Court found that Niva had failed to present sufficient evidence that a hidden peril existed on CCR by virtue of the presence of the washout since the testimony conflicted as to the precise location of the washout. In addition, this Court noted that the accident itself was not sufficient to demonstrate that injury was "probable" in light of the washout area, for the trajectory of the vehicle, as depicted on the CHP diagram, showed that it appeared to be headed off the roadway regardless of the presence of the washout. That conclusion was not refuted by Niva, whose expert did not address the trajectory of the vehicle. Moreover, applying the objective standard noted in Termini, this Court found that the evidence presented failed to establish that a reasonable person, standing in the shoes of the BLM, would clearly recognize that the washout on CCR would "probably" cause injury. Nor did the case present an instance, as in Termini and Rost, where the BLM failed to comply with known safety regulations. As a result, this Court found that Niva had failed to meet his burden that the BLM knew if it did not repair the washout to CCR, injury was probable, and concluded, therefore, that the "willful and malicious" exception to § 846 immunity did not apply.

Contrary to Niva's present contentions, nothing in this Court's findings of fact and conclusions of law state that Section 846 requires: (1) the existence of a hidden peril; (2) the BLM's knowledge of prior accidents at the site; or, (3) BLM regulations regarding the maintenance of CCR. Rather, the prior order, in discussing the applicable caselaw, noted that this case did not present a situation, as had the cases relied upon by Niva, which involved one or more of those factors. Although Niva correctly states that none of those factors is mandatory in order to impose liability on the BLM in this instance, cases which have imposed governmental liability have all presented one or more of them. See e.g., Rost v. United States,

1  803 F.2d 448 (9th Cir. 1986) (finding government liable where gate was hidden from public view, in

2  violation of known safety regulations, and no action had been taken due to other priorities); <u>Miller v. United</u>

3  <u>States</u>, 945 F.2d 1464 (9th Cir. 1991) (reversing summary judgment in favor of government where Forest

4  Service was aware of washed out portions of roadway, believed the wash-outs posed a hazard, but failed

5  to warn motorists of dangerous condition); <u>Termini v. United States</u>, 963 F.2d 1264 (9th Cir. 1992)

6  (imposing liability on government where it possessed actual knowledge of the peril and failed to observe its

7  own safety standards in maintaining the spur).

8  Moreover, these cases belie Niva's argument that "if a dangerous condition is found by the trial

9  court, then it must necessarily mean a substantial risk of injury is present, not merely possible, but

10 <u>probable</u>." Niva's Motion for New Trial at p. 3, lines 9-11.  To the contrary, it is clear that Niva must

11 establish the BLM had actual or constructive knowledge of *both* the peril and that injury was probable as a

12 result of that peril. <u>Mattice v. United States</u>, 969 F.2d at 822.  As illustrated by the cited caselaw, these

13 requirements are separate and distinct and must both be established before liability may be imposed.  None

14 of the cases cited by Niva hold that the existence of a dangerous condition automatically means that the

15 condition creates a substantial risk of injury. <u>See</u> Niva's Brief at p. 3, lines 23-26.

16 In a recent decision in this district, the Court reiterated that all three elements, knowledge of the

17 peril, knowledge that injury is probable, and conscious failure to avoid the peril, must be present to

18 establish willful or malicious conduct on the part of the government. <u>See, e.g.</u>, <u>Colin v. United States</u>, 2001

19 WL 776998, *4 (N.D. Cal. 2001).  In <u>Colin</u>, plaintiff was rendered a quadriplegic when he fell headfirst

20 into shallow water at the Lake Sonoma Warm Spring Dam after the tree branch on which he was climbing

21 broke.  Colin sued the government as the landowner under the FTCA and the government moved for entry

22 of judgment in its favor based on the immunity afforded under Section 846.  In analyzing the exceptions to

23 landowner immunity, the Court concluded that, although Colin had established actual or constructive

24 knowledge of the peril on the part of the government, he failed to prove that the government knew injury

25 was probable as a result of the danger. <u>Colin</u>, 2001 WL 776998, *5.  In reaching that conclusion, the

26 Court noted the lack of any prior accidents at the site as a circumstance which may be taken into account in

27 determining whether the government had actual or constructive knowledge that injury was probable as a

28

7

1 result of the existence of a dangerous condition.  <u>Id.</u>

2 In this instance, as in the <u>Colin</u> case, an examination of the facts and circumstances presented support the conclusion that the BLM did not know injury was probable due to the washout on CCR existing prior to Niva's accident.  Under the caselaw interpreting the applicability of the exceptions provided in § 846, the absence of prior accidents at the Niva site or any disregard by the BLM of safety standards regarding the maintenance of CCR are relevant considerations.  For these reasons, Niva's request for a new trial based on this Court's finding that the BLM is entitled to immunity under § 846 is denied.  In addition, the Court denies Niva's request to determine the speed at which his vehicle was traveling at the time of the accident, as any such finding is unnecessary in light of the conclusion that the BLM is entitled to immunity pursuant to California's recreational use immunity statute.

C.    <u>Evidence Admitted/Excluded at Trial</u>

1.    <u>Rudy Degger Testimony</u>

Niva argues that this Court erred in admitting and relying upon the testimony offered by the BLM's expert, Rudy Degger, regarding the trajectory of Niva's vehicle, but fails to identify any specific testimony which he seeks to exclude.  Moreover, the testimony was received at trial without any objection from Niva.  While he correctly points out this Court's stated preference during trial was to receive expert testimony and evidence first and later rule on objections, he concedes that he presumed "that the Court wanted information and was reserving its right to later examine the foundation of the opinion, presumably to the time when proposed findings of fact and conclusions of law would be offered."  Niva's Reply Brief at p. 10, lines 13-16.  Contrary to his own presumption, however, Niva failed to object to Degger's testimony regarding the trajectory of the vehicle in his proposed findings of fact and conclusions of law.[4]  By failing timely to assert his objections, Niva waived any objection he may have had regarding the admissibility of Degger's testimony concerning the trajectory of the vehicle.  <u>See</u> <u>e.g.</u>, <u>Marbeled Murrelet v. Babbitt</u>, 83 F.3d 1060, 1066-1067 (9th Cir. 1996) (party that failed to make objections at trial waives right to raise admissibility

---

[4] During trial Niva did object, however, to Degger's testimony regarding the cause of Niva's injuries.  <u>See</u> Reporter's Transcript ("RT") at 664, 665, 693, 694.  That objection further belies Niva's present assertion that he believed he did not need to object to Degger's testimony at the time that it was proffered but could wait to some later date to assert his objections.

8

issues on appeal).

In any event, even assuming Niva's present objection to the testimony proffered by Degger concerning the trajectory of the vehicle is timely, the objection is overruled. The record establishes that Degger is qualified as an accident reconstruction expert to opine as to the anticipated trajectory of the Niva vehicle. Although Niva complains that Degger did not visit the accident site, the expert's testimony was based on his review and understanding of the reports and diagrams of the accident scene and is, therefore, amply supported. For these reasons, the request to exclude Degger's testimony concerning the trajectory of the vehicle is denied. In addition, the Court denies Niva's further request that the Court amend its findings to declare whether the washout was on the shoulder of the roadway or in the traveled portion of the roadway since such finding is unnecessary in light of the conclusion that the BLM is entitled to immunity pursuant to California's recreational use immunity statute.

2. CHP General Order 100.46

Niva contends that the Court erred in failing to admit Exhibit 61, CHP General Order 100.46, for the purpose of impeaching the entire CHP report and demonstrating his contention that CHP investigations involving public entities are not conducted in an unbiased manner and are, rather, specifically prepared to exonerate public entities when those entities are involved in potential liability situations. Although he concedes that Officer Treiner testified as to the substance of the General Order and affirmed that he was aware of its contents when he prepared the CHP traffic report, Niva argues that "the actual language of the order is much more damning." Reply at p. 11, lines 18-19. The Court disagrees and notes that the General Order is cumulative based on Officer Treiner's testimony.[5] As a result, the request to admit the exhibit is denied.

IV. CONCLUSION

For the reasons stated, Niva's motion for a new trial is denied.

IT IS SO ORDERED.

---

[5] The General Order would not be implicated, in any event, since Officer Treiner testified that, in his opinion, the accident was not caused by a defect in the condition of the road but by Niva's driving under the influence and too fast to permit him to negotiate the turn in the roadway. RT at 129, lines 8-19.

9

Dated: August 3, 2005

   /s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN DELIVERED TO:**

Mark St. Angelo    mark.st.angelo@usdoj.gov

John C Stein    boccardo@boccardo.com, tracey@boccardo.com;jstein@boccardo.com

**Dated: 8/3/05**                                                              **Chambers of Judge Richard Seeborg**

**By:** _____/s/ BAK_____