**\*E-Filed 10/29/09\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GARY NIVA, et al,

        Plaintiffs,

v.

UNITED STATES OF AMERICA, et al,

        Defendants.

                                       /

**No. C  03-00908 RS**

**ORDER DENYING REQUEST TO REOPEN DISCOVERY AND TO PERMIT INTRODUCTION OF EVIDENCE REGARDING SEATBELT USE**

## I. INTRODUCTION

In this action arising from an automobile accident on a road maintained by the United States Bureau of Land Management ("BLM"), liability and damages issues were bifurcated and the case proceeded to a bench trial on liability. The Court ultimately apportioned fault at 65% to BLM, with the remaining 35% assigned to the driver of the vehicle, original plaintiff Eric Niva, who is now deceased.[1]

During the liability phase, the parties were in agreement that three potential factors could have given rise to fault on the part of Niva: (1) excessive speed in light of the conditions; (2)

---

[1] By an amended complaint filed after Niva's death, his parents, Gary and Alinka Niva substituted in as plaintiffs.  It is not entirely clear from the amended complaint whether the parents appear solely in their capacity as administrators of their son's estate or whether they are also pursuing their own claims for wrongful death.  This order will use "Niva" to refer to Eric Niva, and "plaintiffs" or "the Nivas" to refer to the current plaintiffs.

1

impairment due to alcohol consumption, and; (3) ejection from the vehicle during the crash, suggesting that Niva's injuries may have largely been the result of his failure to use his seat belt. The Court concluded that BLM had succeeded in showing that both Niva's speed and his alcohol consumption were contributing factors to the accident. As to the seatbelt issue, however, the Court found that BLM had failed to meet its burden of proof to show it was more likely than not that Niva was unbelted.

Now, on the eve of trial in the damages phase, BLM moves for "clarification" of the order assigning comparative fault, contending that the seatbelt issue can and should be the subject of further litigation. In essence, BLM believes that it should be permitted to introduce additional evidence that Niva was unbelted, that his injuries resulted from being ejected, and that had he been belted, his injuries would have been avoided or minimized. If it so proves, BLM contends, the percentage of Niva's damages for which it is liable would be further reduced below the assigned 65%, and perhaps eliminated entirely.

The Nivas vigorously oppose BLM's motion, both substantively and by arguing that it is an improper motion for reconsideration. The real question posed by BLM's present motion, however, is only whether it is entitled to litigate the seatbelt issue in the damages phase. The prior order neither considered nor decided that issue, so BLM elects to characterize its motion as seeking clarification, rather than reconsideration.[2] Were the Court now to conclude that the seatbelt issue can be litigated in the damages phase, that arguably would be inconsistent with some language in the prior order, but it still would not be reconsideration of an issue previously decided.

The more substantive problem BLM faces, however, is that the prior order *did* decide, as a finding of fact, that BLM had failed to show Niva was unbelted, a finding equivalent to a determination that Niva was belted. Although *this* motion does not ask the Court to make a contrary finding at the present juncture, BLM wishes to present evidence and argument for such a finding at trial. That would be reconsideration in a very real sense.

---

[2] On reply, BLM asks that its motion be "deemed" both a request under Civil Local Rule 7-9 to file a motion for reconsideration and such a motion, should the Court find it necessary. The Nivas sought leave to file objections to such new matter being raised in the reply, which was granted. It is not necessary to address the Nivas' objections further, as the Court is not granting reconsideration.

As explained further below, there is no basis to permit BLM to relitigate the seatbelt issue, because, rightly or wrongly, it was submitted to the Court for decision during the liability trial with the full acquiescence—indeed, active participation—of BLM.  The question was decided and BLM has not pointed to any principle or authority that would permit the Court to re-examine a decided issue of fact in the second part of a bifurcated proceeding, nor has BLM shown any reason that it would be fair or reasonable to give it a "do-over."

## II.  BACKGROUND

As described more fully in prior orders, in the accident at issue Niva's vehicle left the roadway on BLM land and rolled down a hillside.   There was no direct evidence as to whether Niva was wearing his seatbelt at the time of the accident.   Some circumstantial evidence suggested he was not, including the facts that he was first found outside the vehicle, and that he had suffered a broken neck,  both consistent with having been ejected from the vehicle and which, depending on when paralysis resulted, could have rendered him incapable of exiting the vehicle.  Other circumstantial evidence, including the crushed roof on the driver's side, and the vehicle's activated hazard lights, supported a conclusion that he suffered his injury inside the vehicle and crawled out afterwards.  The order allocating comparative fault concluded that on the entire record, BLM did not meet its burden to show that Niva was unbelted.

In the present motion, BLM contends that Niva's seatbelt use or non-use is an issue that more properly should have been litigated in the damages phase of this bifurcated proceeding.  As BLM points out, there is no contention that any failure by Niva to wear his seatbelt contributed to the cause of the accident itself in any manner.  Rather, BLM only contends that Niva's *injuries* were primarily the result of his being unbelted when the accident occurred.

BLM states that until shortly before the liability trial began, it believed there to be no dispute that Niva was ejected from the vehicle during the accident.[3]  BLM points to the initial Joint Case

---

[3]  There appears to be no dispute that *if* Niva was ejected, the only reasonable inference would be that he was not wearing a seatbelt.  There is no suggestion that the seatbelt system—a lap and shoulder harness—failed.

Management Conference Statement, executed by plaintiffs' counsel, which stated, "plaintiff, who had been ejected from the vehicle as it went down the hill, suffered serious injuries."[4]

When the Joint Pretrial Statement was due, BLM initially filed its own separate pretrial statement, explaining that it had been unable to obtain timely input from plaintiffs' counsel. That separate statement included as an "undisputed fact" the assertion that "[a]his pickup truck rolled and tumbled down the hillside, Niva was ejected from the pickup." The following day, the parties filed a joint statement from which that language had been removed. The joint statement instead expressly listed as disputed factual issues, "[w]hether Niva was wearing a seatbelt at the time of the accident" and "[i]f not, to what extent Niva's injuries were the result of Niva's failure to wear a seatbelt."

At the conclusion of the liability trial, the parties each submitted proposed findings of fact and conclusions of law. BLM's submission included four paragraphs under the heading, "Niva's Serious Injuries Were Caused By His Failure To Wear A Seatbelt." Plaintiffs' submission proposed a finding that BLM had failed to so prove. At the hearing regarding the proposals,[5] the Court specifically inquired of counsel if they were seeking an apportionment of liability at that juncture (assuming BLM's arguments that it had no duty to maintain the road and that it was immune were rejected). The Court stated, "you're not contemplating that as being part of the damages process. You're expecting an apportionment from me now." Counsel for BLM responded, "I think that would be required because it's allowed." Thereafter, when the Court listed the issues that had been raised as arguments for Niva's comparative fault, specifically including "the seatbelt issue," BLM responded: "We have the burden of showing that these issues were there. I don't think we have the

---

[4] In opposing a motion to dismiss or for summary judgment subsequently brought by BLM, plaintiffs asserted only that there existed "contested evidence with regard to *the effect* of seat belt use" (emphasis added). The issues in that motion, however, were only whether BLM had any duty to maintain the road, and whether one or more immunities applied.

[5] Because this was a bench trial, the Court requested the parties to submit their proposed findings of fact and conclusions of law, and scheduled a hearing thereon, in lieu of entertaining closing arguments immediately after the close of evidence.

4

1  burden of showing exactly what the percentage is.  That is something for the trier of fact to
2  conclude."

3   The Court thereafter entered findings of fact and conclusions of law that did not address the
4  seatbelt issue (or any other issue of comparative fault) because it concluded that the claim against
5  BLM was barred by the immunity provided in California's recreational use statute, Cal. Civ. Code §
6  846.  Niva successfully appealed that conclusion to the Ninth Circuit, and the matter was remanded
7  for further proceedings.  After the remand, the parties filed a joint statement advising the Court that
8  both sides believed "the comparative negligence of the United States and Mr. Niva" had been "fully
9  briefed and argued" and suggesting that the Court decide the matter without further briefing or
10 argument.

11  The Court nonetheless solicited further briefing from the parties to assist it in evaluating the
12 comparative fault of Niva and BLM.  In response, BLM for the first time took the position that,
13 contrary to the joint pretrial statement and its submissions at the conclusion of the trial,
14 consideration of whether Niva was belted or not, and the effects thereof, should be deferred until the
15 damages phase of the litigation.[6]

16  The Court's order allocating fault noted BLM's argument that the seatbelt issue should be
17 deferred, acknowledging it held "some logical appeal," given that any failure by Niva to use his
18 seatbelt was in no way a contributing cause of the accident itself.  Conversely, though, the order
19 observed that engaging in a two-step apportionment process seemed "peculiar," and that BLM had
20 not offered any authority establishing a requirement for proceeding in that manner.[7]  The Court then
21 concluded that it "need not decide whether a failure to use seat belts goes to an apportionment of

---

[6] BLM's opening brief in response to the Court's order for further briefing made this suggestion in a footnote, with no analysis or authority.  BLM's reply brief developed its argument further.

[7] In support of this motion BLM has now presented some out-of-state cases and secondary authorities that appear to endorse the two-step apportionment it is advocating.  Even assuming those authorities would have been persuasive enough to have supported postponing the seatbelt to the damages phase had BLM sought to do so prior to or during the initial trial, they are not sufficient to relieve BLM from the consequences of its decision to litigate and submit the issue for decision in the liability phase.

5

No. C 03-00908 RS
ORDER

liability or an apportionment of damages," because as a matter of evidentiary proof, BLM had not met its burden to show that Niva was not unbelted at the time of the accident.

## II. DISCUSSION

### A. Clarification v. Reconsideration[8]

The essence of the relief BLM is seeking through this motion is permission to conduct certain further discovery related to the question of whether Niva was wearing his seatbelt at the time of the accident and then to introduce evidence and argument on that point during the upcoming damages trial. The Court has not previously been asked to decide the precise question of whether it would be proper to litigate the seatbelt issue further, so in that sense BLM is not asking for "reconsideration" of a prior decision. Likewise, although BLM did previously raise the question as to whether the seatbelt issue was more properly characterized as a damages rather than liability issue, the allocation order expressly declined to decide the point, given the failure of proof. Thus, there is no prior determination to reconsider regarding whether seatbelt usage ordinarily should be a damages issue or a liability issue.

What the Court's prior order *did* decide was the factual question of whether Niva was wearing a seatbelt or not. Although that determination was made on the grounds of failure of proof, the legal consequences are the same as if it had been Niva's burden and the Court had affirmatively found that he had been belted. See Restatement of Judgments (Second) § 27, comment d (issue preclusion may be applied to prevent relitigation of a matter previously decided "based on a failure of pleading or of proof as well as on the sustaining of the burden of proof.") BLM's present motion, however, does not seek reconsideration of that finding—yet. The motion does, of course, anticipate being able to have that finding reconsidered during the upcoming damages trial.

---

[8] The Nivas note that no rule specifically authorizes a motion for "clarification," but where a party genuinely needs further guidance from the Court as to some issue, there appears to be no reason to bar such a motion, and the Court has inherent power to provide such further clarification as may be appropriate in the particular circumstances.

6

Thus, plaintiffs' complaint that BLM is seeking reconsideration without first seeking leave of Court to file a motion for reconsideration is largely unfounded. While BLM does request the opportunity to have the seatbelt issue reconsidered at trial, its present motion is, in effect, a motion for leave to seek reconsideration, although it was not so labeled or presented when originally filed.

B. The Merits

Regardless of whether this motion involves reconsideration at this point in time or not, the ultimate goal of BLM undeniably is to obtain the opportunity to attempt to persuade the Court through further evidence and argument that it should make factual findings that (1) Niva was ejected from the vehicle as the result of being unbelted; (2) Niva's cervical fracture and resulting quadriplegia (and ultimate death) was the result of his being ejected from the vehicle; and (3) BLM's total liability should be reduced or eliminated accordingly.[9]

BLM argues that it always believed it would be permitted to raise the seatbelt issue in the damages phase, and the matter was only part of the liability phase because of plaintiffs' insistence that it be included in the joint pretrial statement. BLM complains it never was on notice that its "sole opportunity" to put on seatbelt evidence would be in the liability phase, and that it certainly never so stipulated or agreed. There is nothing "inconsistent," BLM contends, in allowing limited seatbelt evidence to be considered with allocating fault for *the accident* and then readdressing the issue when considering the causes of Niva's *injuries.*

There are at least two critical flaws in BLM's argument. First, regardless of the subjective state of mind of its counsel, BLM never took any action to reserve any issues relating to seatbelt

---

[9] BLM appears to recognize that were the seatbelt issue re-opened and it proved Niva was not belted, it might have the obligation to show what injuries Niva would have sustained had he been belted. See Motion at 5:12-15 (quoting *Franklin v. Gibson*, 138 Cal.App.3d 340, 344 (1982) ("[t]he burden is upon the defendant to prove. . . what injuries plaintiffs would have sustained, according to expert testimony, if the seat belts had been used.")). While BLM has previously repeatedly pointed to the lack of serious injuries suffered by Niva's belted passenger as circumstantial evidence that Niva likely was injured by ejection, the evidence showed substantial roof crush on the driver's side. Thus, even if the issue were reopened and the Court were to conclude that Niva was ejected, it is not immediately clear how BLM would establish to the requisite degree of certainty that he suffered greater injuries as a result.

usage. Rather, as the chronology above reflects, BLM affirmatively told the Court that the seatbelt issue should be decided at the conclusion of the liability phase, both by submitting proposed findings of fact and conclusions of law that addressed the issue in detail, and through its comments at the hearing thereon. Plaintiffs' "insistence" may have made it necessary to list the issue in the pretrial statement, but if BLM believed some part of the question should be reserved for the damages phase, it was incumbent on it to alert the Court and seek a resolution before simply submitting the entire matter for decision. Furthermore, after the appeal and the remand, BLM again affirmatively re-submitted the seatbelt issue for decision without reserving any aspect of it for the damages phase, when it advised the Court that the parties were in agreement that the matter could be decided without further evidence, argument, or briefing.

Second, and more fundamentally, while there may be a distinction between the causes of the accident and the causes of Niva's injuries, the threshold factual question is the same: was Niva wearing a seatbelt? Nothing in BLM's argument or authorities suggests that it would be proper to answer that question one way during the liability phase, but a different way in the damages phase. Had the Court found during the liability phase that Niva was *not* wearing a seatbelt but that his failure to do so was not a basis for reducing BLM's liability for the *accident*, then perhaps it would have been possible for BLM to present evidence and arguments during the damages phase that Niva's *injuries* were the result of being unbelted, possibly even without having expressly reserved those issues during the liability phase. In such circumstances, the question being decided in the damages phase would be different from that already decided.[10] However, the converse situation— where the Court effectively found that Niva *was* belted—is not equivalent. The Court could not now reach the conclusion BLM advocates as to the cause of the injuries without first re-examining the *same* question submitted for decision in the liability phase as to whether Niva was belted.

---

[10] This may have been the very scenario counsel for BLM contemplated when he envisioned possible further litigation of seatbelt issues in the damages phase. See Supplemental St.Angelo Decl. at ¶ 3. ("I believed that, if the United States [were] assessed any liability after the liability trial, the United States could then hire one or more experts to deal with the question of the extent to which Eric Niva's *injuries were caused by his lack of use of a seatbelt.*" (emphasis added)).

The parties dispute whether the doctrine of judicial estoppel applies to these circumstances. As BLM points out, judicial estoppel ordinarily precludes a party who has *benefited* from successfully advocating one position from later advocating for an inconsistent position. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Here, BLM was "successful" in the technical sense that the Court accepted the position that it took during the liability phase that the seatbelt issue should be decided then, but there is no indication BLM was seeking to benefit by adopting that position, and it certainly did not achieve favorable results by doing so. Even though there is a fundamental inconsistency between BLM's prior submission of the question of whether Niva was wearing a seatbelt and the relief it seeks now, BLM has offered a plausible explanation for why it believed it might be possible to address the issue during both the liability and damages phases. See *New Hampshire*, 742 U.S. at 749 (suggesting that estoppel is likely to apply, "absent any good explanation" for a change in position.)

Thus, this is not a case where a party has vigorously advocated one position when it served its interests to do so, only to take an entirely contrary position when circumstances changed. Although the application of judicial estoppel does not turn on "inflexible prerequisites or an exhaustive formula," it ultimately is an equitable doctrine to be applied in the Court's discretion to prevent "parties from playing fast and loose with the courts." *New Hampshire*, 532 U.S. at 750 (internal quotations and citations omitted). Here, the circumstances do not rise to a level clearly mandating the application of judicial estoppel, and this decision does not rest on those principles.[11]

That said, it does not follow that BLM can or should be given the relief it requests. BLM contends that it never waived the right to address the seatbelt issue in the damages phase and that plaintiffs have not urged the doctrine of waiver in their opposition. Plaintiffs have, however, advanced the argument that BLM has presented no grounds on which it would be proper for the

---

[11] At the hearing, BLM cited a case where the Ninth Circuit found a district court to have abused its discretion in applying equitable estoppel. The cited opinion, however, was withdrawn by the court upon a grant of rehearing. See *Perretta v. Prometheus Development Co., Inc.*, 527 F.3d 853 (9th Cir. 2008). The subsequent decision was rendered by unpublished memorandum, and therefore does not represent controlling precedent.

9

Court to reexamine an issue of fact it has already decided. While the Court does not agree that this motion itself necessarily violates Civil Local Rule 7-9 or requests a new and different finding at this juncture, plaintiffs are correct that BLM is ultimately seeking such relief. Although technically the prior finding remains interlocutory because no final judgment has entered, "reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). BLM has explained why it believes there is now additional evidence to offer on the seatbelt issue, but again its arguments all rest on the premise that it was reasonable to think that further consideration of the cause of the injuries might be appropriate in the damages phase. Whether or not that might have been so had the threshold question of whether Niva was wearing a seatbelt come out differently, the possibility has now been foreclosed.

In short, BLM asked the Court to decide whether Niva was wearing a seatbelt based on the evidence presented in the liability trial. The Court decided the issue. BLM has shown no reason it should be permitted to relitigate the issue now.[12]

## IV. CONCLUSION

To the extent that this order "clarifies" the status of the seatbelt issue, BLM's motion has been granted. However, the substantive relief sought by the motion—the right to take further discovery and to submit evidence and argument during the damages trial that Niva was unbelted and the effect thereof—is denied.

---

[12] One additional factor militates against granting the relief BLM seeks. The order allocating fault issued in April of 2008. This motion was not filed until September of 2009. BLM seems to contend it was not aware that plaintiffs considered the seatbelt issue closed until recently. However, even though BLM has proposed a reading of the allocation order that would not foreclose the issue, BLM knew or should have known from the time the order issued that there was, at a minimum, a question as to whether further litigation on the point would be permitted.

IT IS SO ORDERED.

Dated: October 29, 2009

_____
RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE